**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JACK GORDON GREENE            *
                             *
           Petitioner        *
                             *
                             *        NO: 5:04CV00373   SWW
VS.                          *
                             *
                             *
                             *
LARRY NORRIS                 *
                             *
           Respondent        *

**<u>ORDER</u>**

This is a capital habeas proceeding under 28 U.S.C. § 2254 by Petitioner Jack Gordon

Greene ("Greene").  Before the Court are (1) Greene's supplemental motion for discovery

(docket entry #143), Respondent's response in opposition (docket entry #145), and Greene's

reply (docket entry #147); (2) Greene's third motion for a psychological examination (docket

entry #148) and Respondent's response in opposition (docket entry #149); and (3) Greene's

motion for a scheduling order (docket entry #144).  After careful consideration, and for reasons

that follow, the supplemental motion for discovery will be granted in part and denied in part, the

motion for a psychological examination will be denied, and the motion for a scheduling order

will be granted in part and denied in part.

**I.**

During a hearing held in this case on February 24, 2010, Petitioner Greene testified, over

habeas counsels'[1] objections, that he desired to withdraw his claim pursuant to *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242 (2002). Habeas counsel maintains that Greene lacks the capacity to appreciate his position and make a rational choice with respect to pursuing or abandoning an *Atkins* claim and that he is incompetent to proceed with any aspect of this litigation. Finding the issue of Greene's competency sufficiently raised, the Court ordered that he be transferred to a federal medical facility for evaluation. Following an evaluation, Dr. Christina A. Pietz of the United States Medical Center in Springfield, Missouri issued a report stating her conclusion that Greene is competent to make a rational decision regarding withdrawal of his *Atkins* claim.

In anticipation of a competency hearing, the Court has permitted habeas counsel to depose Dr. Pietz and Arkansas Department of Correction ("ADC") personnel involved in identifying and treating mentally ill death row inmates. Additionally, the Court permitted Dr. George W. Woods, a psychiatrist retained by habeas counsel, to meet with Greene for the purpose of a psychological evaluation and to interview inmates who reside near Greene and correctional officers who interact with Greene.

Habeas counsel now asks the Court to permit additional discovery, including (1) "the same discovery" conducted by a long-term confinement expert in *Dansby v. Norris*, No. 4:02CV04141 HFB (W.D. Ark), (2) depositions of physicians and nurses who have provided Greene medical care; (3) production of documents pursuant to subpoenas duces tecum, and (4) an additional

---

[1]The Court appointed the Arkansas Federal Public Defender to represent Greene in this case. For purposes of this order, the Court will refer to Greene's attorneys of record--Federal Public Defender Jenniffer Horan and Assistant Federal Public Defenders Scott W. Braden and Joshua R. Lee--as "habeas counsel."

psychological evaluation.

## II.

### Discovery in *Dansby v. Norris*

*Dansby v. Norris*, No. 4:02CV04141 HFB (W.D. Ark), is a capital habeas case pending in the United States District Court for the Western District of Arkansas, assigned to United States District Judge Harry F. Barnes.  Like Greene, Petitioner Dansby is represented by the Arkansas Federal Public Defender's Office and his petition includes a claim that he is mentally retarded and thus ineligible for the death penalty.  Six years after Dansby filed his habeas petition, habeas counsel moved to stay the proceedings on the ground that Dansby is incompetent to assist counsel regarding his *Atkins* claim.  *See Dansby*, docket entry #75.

Judge Barnes denied a stay but permitted a psychological evaluation.  *See Dansby*, docket entry #94.  Subsequently, Dansby refused or was unable to communicate with his attorneys and retained experts, and Judge Barnes  held a hearing in which Dansby indicated that he would not cooperate and wished to withdraw his *Atkins* claim.  *See Dansby*, docket entry #124.  Finding the issue of Dansby's competency sufficiently raised, Judge Barnes transferred Dansby to a federal medical center for a competency evaluation. *See id.*

Following Dansby's evaluation at a federal medical facility, Judge Barnes scheduled a hearing regarding Dansby's "competency to proceed."  *See Dansby*, docket entry #140.   In anticipation of the hearing, Judge Barnes granted habeas counsel's motion to permit Dr. Craig William Haney, an expert on the subject of long-term confinement, to tour the ADC Varner Supermax Unit and evaluate Dansby.  *See Dansby*, docket entry #153.   And in  response the ADC's concern that public disclosure of Dr. Haney's report would pose a security risk, Judge

Barnes issued a  protective order barring Dr. Haney "from using information obtained during the tours for any purpose beyond the litigation [in *Dansby*]." *Dansby*, docket entry #164, at 3. Habeas counsel urged Judge Barnes to permit disclosure of Dr. Haney's investigation for use in this case, but he denied the request, finding that he  "must leave other courts to their own sound discretion to determine the scope of discovery in each case . . . . " *Dansby*, docket entry #164, at 2.

Habeas counsel now asks this Court to "find under Habeas Rule 6 that . . . counsel has good cause to conduct the same discovery in this case that was conducted in the *Dansby* case." Docket entry #143, ¶ 4.  Additionally, habeas counsel seeks "to discover information about the conditions of Arkansas's death row and the psychological effects of those conditions, uncovered by Dr. Craig Haney during his work in the *Dansby v. Hobbs* case."  Docket entry #147, at 6. According to habeas counsel, "a finding of good cause pursuant to Rule 6 would ameliorate the concerns expressed by the *Dansby* Court . . . . " Docket entry #143, ¶ 5.

This Court  will not impair or contradict the protective order in *Dansby*, which Judge Barnes entered in response to the ADC's security concerns.  Furthermore, the Court finds no cause for conducting similar discovery in this case.   The Court has permitted Dr. George Woods to conduct a  psychological evaluation of Greene and interview inmates and correctional officers at the prison.  The Court finds that Dr. Wood's investigation is an adequate source for information regarding the conditions of Greene's confinement.

**Depositions of Treating Physicians and Nurses**

Habeas counsel seeks leave to depose four health care professionals, who have provided Greene treatment during his incarceration at the ADC.  Although Respondent initially objected

4

to this request, habeas counsel now states that Respondent has no objection to the proposed depositions. Without opposition from Respondent, the Court will permit the requested depositions of four health care professionals.

**Subpoenas Duces Tecum**

Habeas counsel asks the Court to permit issuance of twenty-five subpoenas duces tecum. Among the proposed subpoenas are (a) six directed to hospitals located in North Carolina requiring production of "all records" regarding Greene's family members; (b) one directed to the North Carolina Division of Social Services requiring production of "all records" regarding Greene, his parents, grandparents, siblings and children; (c) one directed to the Federal Bureau of Investigation requiring production of "all records related to" Greene; (d) six directed to North Carolina agencies requiring the production of "records regarding" Greene and Greene's brother, son, daughter, and grandfather; (e) two directed to North Carolina courts requiring the production of all court files for Greene's son and daughter and all commitment records for Greene's sister and grandfather; and (f) four directed to Arkansas and North Carolina agencies requiring the production of "all records related to any complaint filed by Mr. Greene." Counsel also seeks a subpoena directed to the Arkansas Department of Correction requiring the production of "all records related to Mr. Greene."

Habeas counsel asserts that the records sought under the proposed subpoenas are directed at "evidence to *further* support counsel's claim that Mr. Greene is indeed seriously mentally ill."[2]

---

[2]Although the presence of mental illness is certainly relevant to whether Greene is competent to withdraw his *Atkins* claim, resolution of the competency issue does not hinge on the presence or absence of a mental illness but whether mental illness substantially affects Greene's present capacity to appreciate his options and make a rational choice among them. *See Smith v. Armontrout*, 812 F.2d 1050, 1056 (8th Cir.1987)(quoting *Rees v. Peyton*, 384 U.S. 312,

Docket entry #143, at 7(emphasis added).  According to the affidavit of Dr. Woods filed in this case on February 15, 2010, he has examined  "substantial evidence" regarding the history of Greene and his family members, which reveals factors that predict a psychotic disorder.[3]  The Court finds that the probative value, if any, of similar information sought under the proposed subpoenas is significantly outweighed by the time and resources required to comply with habeas counsel's broad document  requests.

**Psychological Evaluation**

Habeas Counsel seeks an order permitting Dr. Dale Watson, Ph.D., a neuropsychologist, to conduct an in-person psychological evaluation of Greene.  Dr. Watson met with Greene for two and one-half hours on May 20, 2009 and administered several tests, but he was unable to conduct further testing in days that followed because Greene reported that he was physically incapable of participating in further testing.  *See* docket entry #61, Ex. #1 (Watson Dec).  By declaration  dated August 20, 2009, Dr. Watson opines, as set forth below, that Greene suffers from somatic delusions associated with a psychiatric disorder, and he states that an evaluation by a psychiatrist is required:

> Additionally, in light of the well-known genetic component of many psychiatric disorders, the extensive history of mental illness on both sides of Mr. Greene's biological family further suggests that he is suffering from a major mental disease.

---

314 (1966)).

[3]Dr. Woods's affidavit sets forth extensive and detailed information regarding the social, mental health, and criminal history of Greene and his family members.  *See* docket entry #84, Ex. #1.  Dr. Woods testifies that "in light of substantial evidence," Greene's history reveals risk factors that predict a  psychotic disorder.  *Id.*, ¶ 83.  Dr. Woods further testifies: "The extensive history that I have for Mr. Greene is necessary, but it is not sufficient.  A skilled and careful exploration of the information that only Mr. Greene himself can provide is required."  *Id.*

> *In order to accurately assess and diagnose Mr. Greene's disorder, an evaluation by a psychiatrist is required. Further testing (by a psychologist), which is a lengthy process, examining his personality and psychiatric functioning is unlikely to be successful given Mr. Greene's current level of functioning.* On the other hand, a psychiatrist, relying on their skills with diagnostic interviewing, should be able to establish the diagnosis.

Watson Dec. ¶ 20(emphasis added).

Counsel's request for a second evaluation by Dr. Watson is denied.  It is the duty of the Court to make a judicial determination as to whether Greene is competent to withdraw his *Atkins* claim.  To that end, the Court has subjected Greene to psychiatric examination at a federal medical facility and has permitted a second evaluation by Dr. Woods.  Especially in light of Dr. Watson's opinion that an accurate assessment of Greene's disorder requires an evaluation by a psychiatrist and that further testing by him would most likely be unsuccessful, the Court finds that the psychiatric evaluations conducted thus far are sufficient and that further testing will only serve to delay a determination of whether Greene is competent to waive his *Atkins* claim.

## II.

By order entered February 15, 2011, the Court notified the parties as follows:

> *The Court intends to set a date for an evidentiary hearing regarding Greene's competency, and will contact counsel regarding possible dates.*  Additionally, unless the parties agree to different deadlines, the Court will set expert disclosure deadlines according to the 90-30 day sequence set forth under Fed. R. Civ. P. 26(a)(2)(D) and require that pretrial disclosures be made and discovery be concluded 30 days prior to the scheduled hearing.

Docket entry # 142.

Following entry of the February 15 order, the Court contacted counsel by email and offered two hearing dates: June 17 and June 24, 2011.  Habeas counsel responded that the proposed dates were unworkable because Dr. Woods's evaluation had not been scheduled and it

would be impossible to submit an expert report ninety days prior to the hearing.

Now before the Court is habeas counsels' motion for entry of a scheduling order. The motion is accompanied by a proposed schedule, which provides a 30-day period for discovery motions and motions for psychiatric evaluations and an additional 60 day period for completion of discovery. The Court finds that additional discovery and psychiatric evaluations, beyond that previously permitted and granted in this order, is unwarranted.[4] Additionally, in light of discovery conducted since the Court's initial attempt to set a hearing date,[5] the Court finds that an additional 90 days to complete discovery is unnecessary.

Together with this order, the Court will enter a scheduling order. The parties are advised that any request for a continuance of the hearing date must be made by written motion.

### III.

IT IS THEREFORE ORDERED that Petitioner's supplemental motion for discovery (docket entry #143) is GRANTED IN PART AND DENIED IN PART. The motion is granted to the extent that Petitioner's unopposed request to depose four health care providers is granted,

---

[4]The proposed scheduling order provides that (1) motions for discovery and  psychiatric evaluations shall be due 30 days after entry of the scheduling order; (2) discovery shall be completed 60 days after expiration of the discovery motions deadline; (3) disclosures of expert testimony and reports shall be due 30 days after expiration of the discovery deadline; (4) disclosure of rebuttal expert testimony and reports shall be due 30 days after expiration of the expert disclosure deadline; and (5) pretrial disclosures shall be due 30 days after expiration of expert rebuttal disclosures deadline; (6) proposed findings of fact and conclusions of law shall be filed 10 days after the deadline for pretrial disclosures, and (7) an evidentiary hearing "shall be set for the earliest dates amenable to the Court that are at least twenty (20) days thereafter . . . . " Docket entry #144.

[5]The record reflects that habeas has conducted depositions and Dr. Woods has conducted a cell-side evaluation of Greene.

and the motion is denied in all other respects.

IT IS FURTHER ORDERED that Petitioner's third motion for a psychological evaluation (docket entry #148) is DENIED.

IT IS FURTHER ORDERED that Petitioner's motion for entry of a scheduling order (docket entry #144) is GRANTED IN PART AND DENIED IN PART.  The motion is granted to the extent that the Court will enter a scheduling order, and the motion is denied in that the Court declines to adopt habeas counsels' proposed schedule.

IT IS SO ORDERED THIS 23rd DAY OF MAY, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE