IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JACK GORDON GREENE                                        Petitioner

v.                        No: 5:04-cv-00373-DPM

DEXTER PAYNE, Director,
Arkansas Division of Correction                                Respondent

## REPLY IN SUPPORT OF
## MOTION TO REOPEN JUDGMENT

    The State presents no good reason to deny Greene's Rule 60(b) motion. The motion isn't a successive petition because it doesn't attack the Court's resolution of Greene's initial petition on the merits. And the State doesn't even dispute that Greene has made a *prima facie* case of intellectual disability that, if proven at a hearing, would render his execution unconstitutional under current standards. Yet the State would have the Court ignore this evidence because he might have raised it earlier. Rule 60(b)(6) presents a question of equity, and equity doesn't require this draconian approach in a capital case. New developments call into question the Court's earlier decision allowing Greene to waive his *Atkins* claim. In all likelihood Greene falls within a class of persons the Constitution categorically prohibits the State from executing. Rather than allowing the State to execute him anyway, the Court should hold a hearing at which Greene may prove his intellectual disability.

**The issue at hand.** The State thinks that "Greene does not challenge in his motion the Court's 2012 determination that he is competent to waive an *Atkins* claim." Resp. at 13. To the contrary, the Court's 2012 competency determination is exactly what he challenges. Admittedly, that determination is entangled with the merits because it relies heavily on an assessment of whether Greene is intellectually disabled. But Greene attacks the competency determination all the same.

In assessing Greene's competency, the Court assumed that Greene has a mental disease or defect[1] but found his waiver to be "the product of a rational thought process." ECF No. 196, Order at 16–17. Essential to that thought process was Greene's own "rational basis for believing that he is not mentally retarded"—namely, that he "communicates with others on an adult level, and he reads, writes, and speaks fluently." *Id.* at 17. Put differently, Greene's strengths show he's not intellectually disabled, which in turn means he can rationally determine whether to waive the *Atkins* claim. This analysis cannot survive *Moore*. Strengths like ability to communicate don't determine intellectual disability. The Court was wrong to find that Greene could rationally decide to waive the *Atkins* claim because his strengths make it rational to doubt the claim's success.

---

[1] According to the State, the Court "determined that Greene did not suffer from a mental disease, disorder or defect." Resp. at 10. The record shows otherwise. Though the Court clearly thought that Greene isn't intellectually disabled, it made no conclusion about whether Greene suffers from other mental issues that preclude rational understanding.

**Pre-authorization isn't required.** The Rule 60(b) motion doesn't raise a claim that Greene omitted from the habeas petition or seek to re-litigate a claim the Court has already adjudicated on the merits. Indeed, the State admits that "there was no determination made as to his claim of intellectual disability." Resp. at 18; *see also* ECF No. 224, Order at 98. This admission settles the matter. A Rule 60(b) motion is treated as a successive petition only if it contains a "claim," meaning that it "attacks the federal court's previous resolution of a claim *on the merits*." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). A petitioner makes no claim "when he merely asserts that a previous ruling which precluded a merits determination was in error." *Id.* at 532 n.4. That's precisely what Greene alleges in his motion: that the Court's competency ruling, which precluded merits determination of the *Atkins* claim, was in error.

To muddy that directive, the State points to another passage from *Gonzalez*: "We note that an attack based on the movant's own conduct, or his habeas counsel's omissions, . . . ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." *Id.* at 532 n.5. It then argues that "Greene's waiver of his *Atkins* claim was his own conduct" and that the Rule 60(b) motion is "a request for this Court to ignore his competently entered waiver." Resp. at 15. This argument is confused. Whether the Court correctly determined that Greene's waiver was "competently entered" is the very subject of the motion. The attack is not "based on his own conduct" but rather on the Court's decision to accept the waiver. Greene doesn't argue that he'd now like a do-over on a

3

claim he *competently* waived. Rather, he argues that the Court never should have accepted his waiver at all. "The problem for [the State] is that this case does not present a revisitation *of the merits*. The motion here, like some other Rule 60(b) motions in § 2254 cases, confines itself not only to the first federal habeas petition, but to a nonmerits aspect of the first federal habeas proceeding." *Gonzalez*, 545 U.S. at 534.

**The motion has been filed within a reasonable time.** The State insists that Greene should have sought relief earlier. But the question isn't whether the motion might have been brought earlier—it's whether the timing is reasonable. Here, there's no execution date in sight and Greene's motion leaves ample time to adjudicate, once and for all, whether his execution is forbidden under the Eighth Amendment. While the State protests that Greene need not have awaited qEEG testing before filing his motion, this testing adds significant support for the intellectual-disability diagnosis. In particular, qEEG testing requires only passive participation, so the results undermine Dr. Pietz's speculation that Greene's low IQ scores are a function of poor effort. Moreover, Greene's mental difficulties have prevented him from cooperating and have complicated counsel's efforts to investigate and present the basis for the motion. The timing of the motion is reasonable in light of the equities and all the circumstances—which is the inquiry the Court ultimately must conduct.

As an overarching matter, the State contends that Rule 60(b) imposes "strict time constraints" on the filing of motions to reopen. Resp. at 16. That isn't true, at least

not for motions filed under Rule 60(b)(6). While motions under Rules 60(b)(1)–(3) must be filed within a year of judgment, motions under Rule 60(b)(6) must be filed within a "reasonable" time. *See* Fed. R. Civ. P. 60(c)(1). Reasonableness is quintessentially an equitable issue left to the court's discretion. "The action of a trial court in either granting or refusing an application to vacate a judgment is generally speaking within the judicial discretion of the court. . . . [T]he relief is equitable in character and must be administered upon equitable principles." *Assmann v. Fleming*, 159 F.2d 332, 336 (8th Cir. 1947). "Rule 60(b)(6) is fundamentally equitable in nature." *Ramirez v. United States*, 799 F.3d 845, 851 (7th Cir. 2015) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988)). Even a delay of fourteen years might be overcome "under the most extraordinary circumstances." *Zurini v. United States*, 189 F.2d 722, 726 (8th Cir. 1951). So reliance on timing alone is inadequate. Instead, the Court must ask a more complicated question: whether its "sense of justice is offended more by permitting this judgment to stand than by setting aside the judgment in favor of a determination of the merits." *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752, 757 (8th Cir. 1996).

On balance, Greene filed the motion within a reasonable time. Of paramount consideration is the fact that Greene doesn't have an execution date and that no execution date appears to be imminent. Greene has been litigating his competency to be executed since 2017. That litigation remains ongoing. The Arkansas Supreme Court's ruling in *Greene v. Kelley*, 2018 Ark. 316, prevents his execution unless and until

the State establishes a due-process compliant mechanism for determining whether he is competent to be executed. As the State has failed to create such a mechanism, its finality interest in carrying out his death sentence is much reduced. These circumstances separate Greene's case from *Williams v. Kelley*, 858 F.3d 464 (8th Cir. 2017), and *Davis v. Kelley*, 854 F.3d 967 (8th Cir. 2017)—cases in which the petitioners alleged intellectual disability within weeks of their scheduled executions. Unlike those petitioners, Greene, through his habeas counsel, raised his intellectual disability in his first habeas petition, has pursued relief on that claim constantly, and seeks to reopen his case well in advance of any execution date.

The State's other appeals to timing are also unconvincing. It mistakenly cites *Gonzalez* to argue that any delay in excess of nine months is unreasonable. Resp. at 18–19. *Gonzalez* turned not on an unreasonable delay in filing the motion but rather on the Court's determination that a favorable change in statute-of-limitations law wasn't extraordinary by itself, particularly where the petitioner abandoned the issue on direct appeal. *See Gonzalez*, 545 U.S. at 536–38. Greene's motion goes to weightier matter—whether he may be executed—and depends upon questions of intellectual disability that he's pursued from the beginning of the habeas litigation.

In any event, the State's portrayal of "delay" is much overstated in the particular circumstances. This is not a normal case. Greene's mental problems have made it extraordinarily difficult to investigate and present the intellectual-disability evidence (as should be apparent from the Court's review of the record). Booting the case on

timing grounds would not only sanction an execution that is probably unconstitutional—it would penalize Greene for the very mental difficulties that have hindered presentation of the claim in the first place. *Cf. Davis v. Moroney*, 857 F.3d 748, 751 (7th Cir. 2017) (plaintiff's "intellectual limitations," which prevented timely responses, render case extraordinary). Insofar as the Court believes the motion's timing is a problem, a hearing at which Greene is present would further illustrate the reasons for delay.

**Extraordinary circumstances justify reopening.** The motion shows that new developments in science, in law, and in Greene's diagnosis undercut the Court's waiver analysis and, if that diagnosis is proven, prohibit Greene's execution. Though the State strives to portray recent changes in decisional law as irrelevant, it cannot deny that *Moore* has required courts to discard analyses that rely on lay stereotypes and adaptive strengths—factors the Court cited in determining that Greene had a rational basis for believing that he isn't intellectually disabled and thus for waiving his claim.

The State underplays recent changes to science and law, arguing that the definition of intellectual disability in the DSM-5 (the newest diagnostic manual) is "essentially equivalent" to the definition in the DSM-IV-TR. Resp. at 24–25. This argument is based on a stretched reading of *Jackson v. Kelley*, 898 F.3d 859, 868 (8th Cir. 2018), in which the court found that *one specific aspect* of the analysis—namely, the causal connection between intellectual functioning and adaptive functioning—hadn't changed in the DSM-5. (Causation isn't required.) As a whole, however, *Jackson*

7

recognized that the district court "did not have the benefit of" *Moore*, which gave "significant instructions on how to analyze *Atkins* claims." *Id.* at 862. Among other errors that *Moore* clarified, the district court stressed adaptive strengths and skills honed in prison—errors shared in common with the Court's pre-*Moore* competency analysis here. *See id.* at 865.

Supreme Court precedent also rebuts the State's "no change" argument. In *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019), the lower court found that a 2008 state-court decision unreasonably applied federal law under 28 U.S.C. § 2254(d)(1) because, contrary to *Moore*, it emphasized adaptive strengths. The Court summarily reversed because *Moore* wasn't clearly established law in 2008. It explained that "*Atkins* gave no comprehensive definition of 'mental retardation' for Eighth Amendment purposes" and that the *Moore* standards cannot "be teased out of the *Atkins* Court's brief comments about the meaning of what it termed 'mental retardation.'" *Id.* at 507–08.

Though the State is correct that Greene raised the forthcoming *Moore I* opinion in his petition for writ of certiorari, it's incorrect that the Supreme Court's denial of the petition makes the legal shift mundane. Rather, Greene's certiorari advocacy supports his diligence. Contrast the *Gonzalez* petitioner, who couldn't claim a legal change was extraordinary when he didn't even bother to advocate for it on appeal. *See Gonzalez*, 545 U.S. at 536–38. The Supreme Court's denial of certiorari indicates no position on how *Moore I* affects Greene's case. *See Missouri v. Jenkins*, 515 U.S. 70, 85 (1995).

The State argues that a change in the law "by itself" is not usually an extraordinary circumstance that justifies reopening. Resp. at 21–22 (citing *Carlson v. Hyundai Motor Co.*, 222 F.3d 1044 (8th Cir. 2000)). Eighth Circuit guidance on this point has not been entirely clear. The court has also said that a "change in governing law can represent so significant an alteration in circumstances as to justify both prospective and retrospective relief from the obligations of a court order." *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1154 (8th Cir. 2013). In any case, Greene relies not on a legal change "by itself" but also on his intellectual disability. Executing him would be an irrevocable affront to the Constitution.

The State also tries to undercut the factual basis for Greene's motion. It says that Dr. Andrews's diagnosis "is diminished considerably" because no other doctor has found intellectual disability. Resp. at 26. But no other doctor actually assessed for intellectual disability under the currently relevant standards (or under any standard that was ever acceptable). Dr. Pietz came closest—but, as explained in the motion, her test of intellectual functioning placed Greene within the range for intellectual disability and she failed to assess adaptive functioning, which is crucial to clinical (and thus legal) judgment. Insofar as the State wishes to contest Greene's diagnosis it may do so at an evidentiary hearing (the specific relief the motion seeks).

The State is wrong to argue that Greene's diagnosis doesn't amount to an extraordinary circumstance. In light of the constitutional prohibition on executing the intellectually disabled it would be extraordinary to allow such an execution to proceed.

The State cannot be taken seriously when it calls Greene "disingenuous" for arguing that *Hall* and *Moore I* prohibit the execution of intellectually disabled offenders. Resp. at 27. The cases say exactly that. Insofar as this is an attempt to argue that a state may execute an intellectually disabled person because he insists on execution, the argument is impossible to square with the categorical language in *Hall* and *Moore*.

**The Court should reopen the case and hold an *Atkins* hearing.** The Court permitted Greene to waive his *Atkins* claim by finding it rational to think (and for Greene himself to believe) that he isn't intellectually disabled. The basis for the waiver is no longer supportable. The equities support reopening the case to adjudicate whether Greene's execution is unconstitutional (as it likely is). The Court has the discretion to ensure that an intellectually disabled man isn't executed. It should use that discretion to hold a hearing on the *Atkins* claim.

Dated: February 13, 2020            Respectfully submitted,

                                                    LISA G. PETERS
                                                    FEDERAL DEFENDER

                                    By:     JOHN C. WILLIAMS (ABN 2013233)
                                                    Ass't Federal Public Defender
                                                    Federal Public Defender's Office
                                                    1401 W. Capitol, Ste. 490
                                                    Little Rock, AR 72201
                                                    (501) 324-6114
                                                    john_c_williams@fd.org

                                                    *Counsel for Jack Gordon Greene*