IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CAPITAL CASE

JACK GORDON GREENE PETITIONER

v. No. 5:04-cv-373-DPM

DEXTER PAYNE, Director,
Arkansas Division of Correction RESPONDENT

# ORDER

**1. Introduction.** Greene, an Arkansas prisoner under a death sentence, has been through a complete round of *habeas* proceedings. Through appointed counsel, he now moves for relief from that Judgment under Federal Rule of Civil Procedure 60(b)(6). He argues that extraordinary circumstances justify reopening his *habeas* case so he can make an intellectual-disability claim under *Atkins v. Virginia*, 536 U.S. 304 (2002).

The Court has also received papers from Greene himself. The Court directed the Clerk to file a document submitted by Greene as a motion to withdraw the Rule 60 motion and to file his other documents as addenda. At the Court's invitation, both Payne and Greene's counsel responded to Greene's *pro se* filings. Greene sent the Court some more papers, which were docketed as another addendum to his motion. The Court has considered all these filings.

**2. Greene's competency and waiver.** Greene's 2004 *habeas* petition included a claim that he's intellectually disabled and therefore ineligible for the death penalty under *Atkins*. Greene then sought, against his lawyers' advice, to withdraw that claim. Relying on *Rees v. Payton*, the Court ordered Greene transferred to a federal medical facility for a competency evaluation. *Doc. 101*. After that evaluation, the Court (the Honorable Susan Webber Wright presiding) held a two-day evidentiary hearing. The *Rees* standard is whether the petitioner "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees v. Payton*, 384 U.S. 312, 314 (1966). This Court found Greene competent to waive his *Atkins* claim. The Court also determined that Greene's waiver was knowing and voluntary. And the Court granted Greene's motion to withdraw the *Atkins* claim. *Doc. 196*.

In its competency analysis, this Court considered Circuit precedent recognizing that, although the two parts of the *Rees* standard appear as alternatives, "there is necessarily an area of overlap between the category of cases in which at the threshold we see a possibility that a decision is substantially affected by a mental disorder, disease, or defect, and that of cases in which, after proceeding further, we conclude that decision is in fact the product of a rational thought process." *Smith*

*By and Through Missouri Public Defender Commission v. Armontrout*, 812 F.2d 1050, 1057 (8th Cir. 1987). This Court concluded that, even if Greene had a mental disease or defect and was delusional, he was "cognizant of and appreciate[d] the practical consequences of abandoning his *Atkins* claim." *Doc. 196 at 16–17*. The Court found Greene "clearly expressed his strong conviction that he is not mentally retarded and that he does not want his attorneys to assert such a claim." *Doc. 196 at 17*. The Court also noted Greene's understanding that he wouldn't be executed if his *Atkins* claim was successful. *Ibid.*

The Court next addressed whether Greene's waiver was a rational choice:

> Despite his physical problems, whether real or delusional, and his belief that his attorneys are not working in his best interest, Greene has a rational basis for believing that he is not mentally retarded. Greene communicates with others on an adult level, and he reads, writes, and speaks fluently. Furthermore, at the close of the competency hearing, Greene testified that even if he were "anywhere close" to being mentally retarded, he would not pursue an *Atkins* claim.

*Doc. 196 at 17*. The Court quoted Greene's hearing testimony about his reasoning for not pursuing the claim. In sum, Greene did not want to "prolong" his case "year after year after year." He believed there should be a "limit on appeals"; he referred to the cost to taxpayers and "all this ridicule" that he "endured" at the competency hearing. *Ibid.* The Court then summarized its findings:

> The Court need not determine whether Greene is reasoning from "premises or values that are within the pale of those which our society accepts as rational." *See Smith*, 812 F.2d at 1059. It is sufficient that the Court finds, as it does, that Greene's decision is in fact the product of a rational thought process.

*Ibid.*

The Court denied relief on Greene's remaining claims in a final Order entered in March 2015. *Doc. 222-1.* The Court also denied Greene's request for a certificate of appealability on a number of points, including the validity of the *Atkins* waiver. *Doc. 236 & 241.* Greene then sought a certificate from the Court of Appeals on a related point, arguing that reasonable jurists could debate whether an *Atkins* claim can be waived, and whether this Court had applied the correct legal standard and made the correct analysis in finding him competent to waive that claim. *Application for Certificate of Appealability* (redacted) at 18–23, *Greene v. Kelley*, No. 16-1456 (8th Cir. 15 April 2016). In a summary Order, the Court of Appeals denied that motion and dismissed the appeal. *Doc. 245.* After Greene filed a petition for rehearing and rehearing *en banc*, the Court requested a response on whether the "district court applied the correct legal standard in determining whether Greene was competent to waive an *Atkins* claim." *Judge Order, Greene v. Kelley*, No. 16-1456 (8th Cir. 11 July 2016). The Court of Appeals thereafter denied the petitions. *Doc. 246.* In due

course, the Supreme Court denied Greene's petition for writ of *certiorari*. *Greene v. Kelley*, 137 S. Ct. 2093 (1 May 2017) (Mem.).

**3. Current Issues.** Greene, through his lawyers, now urges this Court to revisit the competency determination and consider his *Atkins* claim. He offers four extraordinary circumstances for taking this step.

- The diagnostic framework highlighting adaptive deficits in intellectual-disability assessment, which was published in 2013 in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5);

- New case law—*Hall v. Florida*, 572 U.S. 701 (2014) and *Moore v. Texas* (*Moore I*), 137 S. Ct. 1039 (2017), which altered the analysis of intellectual-disability claims;

- A new diagnosis of mild intellectual disability based on a December 2019 review of records from Greene's 2017 competency-to-be-executed assessment, *Doc. 257-1*; and

- The Eighth Amendment's bar on execution of the intellectually disabled.

Greene argues the Court's competency finding was based on an incomplete and now-outdated intellectual-disability assessment. And he says that, under recent precedent, this Court mistakenly considered his communication skills in finding he had a rational basis for believing he's not intellectually disabled.

The DSM-5 and the precedent—*Hall* and *Moore I*—were not available when this Court found Greene competent in 2012, though

*Hall*, and its reliance on the DSM-5, was decided prior to this Court's final *habeas* Order. Both that edition of the Manual and these decisions, moreover, predate the United States Supreme Court's denial of Greene's petition for writ of *certiorari*. In Greene's petition, he noted that *Moore I* was pending and asked the Supreme Court to hold his petition until that decision was made. *Petition for a Writ of Certiorari, Greene v. Kelley*, No. 16-7425 (29 December 2016). The Supreme Court denied Greene's petition about a month after deciding *Moore*. *Compare Greene*, 137 S. Ct. 2093 (1 May 2017) *with Moore*, 137 S. Ct. 1039 (28 March 2017). A follow-up decision applying *Moore* was decided after Greene's *habeas* case was closed. *Moore v. Texas* (*Moore II*), 139 S. Ct. 666 (2019).

**4. Second or successive petition.** If it advances a claim for relief, Greene's motion must be treated as a second or successive *habeas* petition. *Gonzales v. Crosby*, 545 U.S. 524, 530–32 (2005). Greene says Rule 60(b) review is appropriate because he's not advancing an *Atkins* claim, but instead is attacking the competency finding that allowed waiver of that claim.

A challenge to the competency decision is not a claim under *Gonzalez*. The Supreme Court recognized that a claim, as used in § 2244(b), is "an asserted federal basis for relief from a state court's judgment of conviction." 545 U.S. at 530. A motion brings a claim if it "attacks the federal court's previous resolution of a claim *on the merits*." 545 U.S. at 532 (emphasis original). "On the merits" in this context

means "a determination that there exist or do not exist grounds entitling a petitioner" to *habeas* relief. 545 U.S. at 532 n.4. If Greene's pending motion is considered as a challenge to the competency determination, he is not asserting a basis for *habeas* relief from a state court judgment.

The core of Greene's Rule 60 motion, however, raises an *Atkins* claim within the meaning of *Gonzalez*. The motion is largely devoted to a new diagnosis of Greene's intellectual disability and the application of new cases. Greene attempts to frame his argument as challenging his competency finding. But he is actually asking this Court to consider a new *Atkins* claim based on case law and an intellectual-disability diagnosis unavailable at the time of this Court's competency decision. In concluding his Rule 60 motion, Greene urges this Court to "reopen the judgment and hold a hearing on the merits of [his] *Atkins* claim." *Doc. 257 at 21*. Greene's arguments go beyond a "defect in the integrity of the federal habeas proceedings"; the deeper layer is the merits of an *Atkins* claim. *Gonzalez*, 545 U.S. at 532. Greene's Rule 60 motion therefore is actually a second or successive *habeas* petition, which requires preauthorization from the Court of Appeals. 28 U.S.C. § 2244(b)(3)(A).

Greene's reliance on *Ybarra v. Filson* is misplaced. 869 F.3d 1016 (9th Cir. 2017). The Court of Appeals for the Ninth Circuit held that the petitioner correctly labeled his *Atkins*-based motion as one under

Rule 60(b). That determination, however, was based on that Circuit's reasoning that Ybarra's *Atkins* claim, like a prematurely raised *Ford* claim, was dismissed for "technical procedural reasons." 892 F.3d at 1022–23. The Ninth Circuit's analysis isn't persuasive on this record. Greene waived the *Atkins* claim; it was not dismissed for technical procedural reasons.

**5. Extraordinary circumstances.** Even if Greene's motion is considered under Rule 60(b)(6), he hasn't presented the extraordinary circumstances the law requires for relief. Those circumstances "rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535. Greene's arguments about the developing law on intellectual disabilities, diagnostic framework revisions, and a new diagnosis do not undermine this Court's competency analysis under *Rees*. The Court found that Greene "has a rational basis for believing that he is not mentally retarded" because he "communicates with others on an adult level, and he reads, writes, and speaks fluently." *Doc. 196 at 17*. Greene argues the Court would reach a different conclusion on the rationality of the waiver if later developments in intellectual-disability law are considered. But changes in the law alone aren't usually considered extraordinary circumstances. *Kansas Public Employees Retirement System v. Reimer & Kroger Assoc., Inc.*, 194 F.3d 922, 925 (8th Cir. 1999). The Court, moreover, did not analyze or offer any opinion on whether Greene is actually intellectually disabled under *Atkins*. Because the

Court did not consider Greene's intellectual disability, his related arguments do not reach the Court's competency determination.

Greene points to other references to intellectual disability and IQ testing in the competency-to-waive proceedings:

- The Court ordered IQ testing and an intellectual-disability opinion as part of Greene's evaluation, *Doc. 101 at 2*;
- The Court stated at the evidentiary hearing that Greene's "IQ and his ability to think rationally are factors" that can be considered in determining competency, *Doc. 188-1 at 9*; and
- The Court's evidence summary in the competency Order, *Doc. 196 at 12–13*, included Greene's IQ test results.

Greene says the Court "relies heavily" on an assessment of intellectual disability. *Doc. 267 at 2*. The Court, however, explained at the evidentiary hearing that it "never intended" to make any findings about intellectual disability. *Doc. 188-1 at 9*. Moreover, the Court accepted the parties' stipulation that intellectual-disability evidence would not be introduced. *Doc. 188-1 at 8–9*. Greene also points to the Court's denial of an *Atkins*-related ineffectiveness claim in the final *habeas* Order. That denial, however, was based on the state-court evidence available to Greene's trial lawyers, not the merits of an intellectual-disability defense. *Doc. 222-1 at 87*. None of these references demonstrates that this Court made an intellectual-disability determination as part of the 2012 competency analysis.

Greene also fails to establish that a new intellectual-disability diagnosis is an extraordinary circumstance. In October 2017, Dr. Garret Andrews, a neuropsychologist, examined Greene for competency to be executed. *Doc. 257-1 at 1.* According to Greene, his execution was set for the following month. Two years later, a few days before Greene filed his current Rule 60 motion in December 2019, Dr. Andrews reported that he had reviewed those competency-to-be-executed records and diagnosed Greene with a mild intellectual disability. *Ibid.* Dr. Andrews considered Greene's IQ score of 75 and records of adaptive functioning. *Ibid.* It's true Greene wasn't formally assessed for intellectual disability before Dr. Andrews's 2019 review of his records. But no other expert who examined Greene during his multiple legal proceedings found him to be intellectually disabled. Two state forensic reports—at trial and resentencing—stated that Greene "possessed at least average intelligence." *Doc. 221-1 at 87.* Dr. Christina Pietz is the psychologist who assessed Greene's competency to waive the *Atkins* claim. Her testing showed Greene had an IQ score of 76. Dr. Pietz believed that score likely underestimated Greene's IQ because he was unwilling to complete a subtest involving visual puzzles.

Greene contends the new diagnosis is an extraordinary circumstance because the Court wasn't aware of the diagnosis when it accepted his waiver. He says the Court should reopen his case to hear that intellectual-disability evidence. Greene, however, was found

competent to waive his *Atkins* claim, and he did so. Because the intellectual-disability claim was waived, the Court did not consider it. On this record, the new diagnosis, moreover, is not the compelling evidence required to constitute extraordinary circumstances.

Greene's Eighth Amendment argument isn't an extraordinary circumstance warranting relief either. Citing *Hall* and *Moore*, he contends his *habeas* case must be reopened to prevent the unconstitutional execution of an intellectually disabled person. Greene also submits other supporting authority, *White v. Commonwealth*, 600 S.W.3d 176 (Ky. 2020). During the *White* proceedings on direct appeal, after the case had been remanded by the United States Supreme Court, the Kentucky Supreme Court rejected the defendant's *pro se* efforts to dismiss his *Atkins* claim. The Kentucky state court held the intellectual-disability issue could not be waived for two reasons: the Eighth Amendment bars the death penalty for an "entire category of individuals"—the intellectually disabled; and there was reasonable doubt about whether White was a member of that group. *White*, 600 S.W.3d at 180. The procedural posture of Greene's case, however, requires a different analysis. This Court dismissed Greene's *Atkins* claim in the initial *habeas* proceeding, and a final Order was entered. That decision made its way through the appellate courts. *Atkins* claims are subject to the generally applicable *habeas* procedural rules. *Williams v. Kelley*, 858 F.3d 464, 472–73 (8th Cir. 2017); *Davis v. Kelley*, 854 F.3d

967 (8th Cir. 2017); *Davis v. Norris*, 423 F.3d 868, 879, 970 (8th Cir. 2005). In these cases, the Court of Appeals rejected *Atkins* claims because petitioners raised them for the first time in barred successive *habeas* petitions. Those decisions guide analysis of the Rule 60(b)(6) issue raised here. A waived *Atkins* claim doesn't constitute an extraordinary circumstance requiring this Court to reopen Greene's closed case.

**6. Conclusion.** What Greene has labeled a Rule 60(b) motion is, "if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' the statute." *Gonzalez*, 545 U.S. at 531 (quoting 28 U.S.C. § 2254 and Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts). This Court therefore lacks jurisdiction. Alternatively, Greene has not presented extraordinary circumstances justifying relief under Rule 60(b)(6).

* * *

Greene's motion, *Doc. 257*, is denied without prejudice. Greene's *pro se* motion to withdraw, *No. 273*, is denied without prejudice as moot. No certificate of appealability will issue.

So Ordered.

D.P. Marshall Jr.
D.P. Marshall Jr.
United States District Judge

23 November 2021